(C. D. 465)

KINGSLEY CO. OF CALIFORNIA *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 9, 1941)

*Philip Stein* for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before BROWN and WALKER, Judges

WALKER, Judge: This is a suit against the United States for the recovery of money claimed to have been illegally exacted as customs duties on an importation of lime. Duty was assessed thereon at the rate of 8 cents per hundred pounds under the provision in paragraph 203 of the Tariff Act of 1930, as amended by the Canadian Trade Agreement reported in T. D. 48033, for hydrated lime. The protest claim is that duty should have been assessed at the rate of 7 cents per hundred pounds under the provision in the same paragraph as amended for "Lime, not specially provided for."

The merchandise is described on the *pro forma* invoice accompanying the entry as "1650 bags processed lime, 220 sacks screened crushed lime, 200 bbls. lump lime." On behalf of the plaintiff Guy W. Stong, manager and sales representative of the importer, who received the shipment in question, testified that it consisted of quick, or unslaked lime. Describing the process of producing quicklime he testified:

Well, lime is taken out of stone, taken out of a hill or out of this deposit, and it is run through a kiln, burnt at a temperature varying from 1200 degrees to 1800 degrees for at least 4 to 5 hours. We have to burn all the moisture out of it, and then I say it varies. That is about all I could tell you. That is the only process of calcining it, known as calcining the limestone.

Quicklime, he said, may be known under different terms, according to the further processing it receives. For example, lime as it comes out of the kiln is in 4-inch pieces known as lump lime. This may be put through a crusher and broken down to smaller pieces and is still known as lump lime. When it is crushed down to pea size or dust it is known as crushed lime and is screened as to sizes. When it is crushed down to 200-mesh it is called processed lime.

Hydrated lime, the witness said, is produced by putting unslaked lime through a mechanical slaking machine in which a very fine spray of water is added to slake it slowly, which results in a moisture retention ranging from 20 to 24 per centum.

It appears that the classification of the collector was based upon a chemist's report of the result of analyses of samples of the lime in question which showed it to be hydrated lime. At the time plaintiff

rested there can be no question but that it had made out a *prima facie* case sufficient to shift the burden of going forward with the evidence to the defendant. To meet that burden motion was made on behalf of the defendant that a commission issue out of this court to take the testimony of one Sol Kiczales, a chemist employed in the United States Customs Laboratory at the port of New York, and interrogatories were filed with the motion. Counsel for the plaintiff thereupon objected generally to all of the direct interrogatories propounded by the defendant—

—on the ground that there is no evidence adduced and no proper foundation laid to connect the same with the merchandise at bar, and further on the ground that it has not been established by the defendant that the three samples referred to in the direct interrogatories were received by the witness in the same type of container, and/or under the same conditions as was the merchandise at bar, and further on the ground that the merchandise covered by the three samples above referred to has not been proven to be the same as the merchandise imported at Los Angeles in the case at bar.

Specific objections were also taken to certain direct interrogatories. Ruling on these objections was deferred and cross-interrogatories were duly filed, to some of which objection was taken by the defendant, and ruling thereon was likewise deferred. An order granting the motion was made and the commission issued, and the testimony of Mr. Kiczales was taken.

Counsel for the defendant at a later hearing offered in evidence the commission together with the direct and cross-interrogatories and answers thereto, at which time counsel for the plaintiff stated his objections in the following manner:

Mr. STEIN. If the court please, I object to the commission for the reasons originally stated when the motion was made, and for the additional reasons indicated by my objections to the direct interrogatories, and for the further reason that the evidence which it purports to present on behalf of the Government indicates that the chemist upon whose analysis the classification was based fails to show and clearly indicates that the merchandise analyzed was not in the condition when analyzed as it was when imported; that the merchandise had been transported across the country in a container which the chemist cannot recall as to whether or not it was immune to the elements, and that the analysis was not made at the time of entry but was made at a considerable time after entry, and the product involved and the issue presented here raise the question whether it was affected by the elements; that is, whether or not it was hydrated. I submit that the analysis introduced by the Government and upon which the Government relies and the testimony of the chemist upon which the Government is offering this commission is too remote insofar as the condition of the merchandise when imported is concerned; and the testimony of the chemist and the form in which it is offered is incompetent, irrelevant and immaterial.

The judge presiding ordered the commission to be marked and reserved ruling on its admissibility.

It cannot be denied that the materiality of the evidence offered on behalf of the defendant, i. e., the testimony of the Government

chemist who, it is claimed, analyzed samples of the lime in issue, depends entirely upon the establishment of a connection between the shipment in question and the samples analyzed by the chemist. The Government offered no evidence to show the conditions under which samples were taken, or, indeed, that any samples ever were taken from the shipment in question. We think it is established by the testimony of plaintiff's witness Stong that the manner of packing and shipping a sample of quicklime from the wharf at Los Angeles to the customs laboratory at New York, would have a vital bearing on the moisture content or amount of hydration displayed by the material, and hence would affect the reliability of any chemical analysis performed on receipt in New York. Questioned on the point, the Government chemist admitted he had no recollection of the type of container in which the sample he analyzed was received, and stated that no records were kept from which he might refresh his recollection.

In the absence, therefore, of evidence tending to show that the samples analyzed correctly represented the merchandise in its condition as imported, the testimony of Mr. Kiczales as to the analyses he performed and the results found is immaterial and probative of no fact at issue, and the objection to the admission in evidence of the commission was well taken and is sustained.

On the record thus presented we are satisfied that the plaintiff has made out a *prima facie* case sufficient not only to overcome the presumption of correctness normally attaching to the collector's action but also to establish that the classification claimed by the plaintiff, viz, as "lime, not specially provided for," is correct. Judgment will therefore issue sustaining the claim made in the protest for duty at the rate of 7 cents per hundred pounds under the provisions of paragraph 203 of the Tariff Act of 1930 as amended by the Canadian Trade Agreement reported in T. D. 48033, and the collector will be directed to reliquidate the entry accordingly.